**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

TAMICKO M.,

                Plaintiff,            No. 1:18-CV-280 (CFH)

    v.

COMM'R. OF SOC. SEC.,

                Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

Tamicko M.
Plaintiff pro se

Social Security Administration            JEREMY A. LINDEN, ESQ.
Office of Regional General Counsel      Special Assistant U.S. Attorney
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff pro se Tamicko M.[1] commenced this action on March 1, 2018 with the filing of a complaint. Dkt. No. 1. On March 21, 2018, plaintiff filed an amended complaint pursuant to 42 U.S.C. § 405(g) alleging "fraud, silent fraud, tort, retaliation, change of address." Dkt. No. 8 ("Am. Compl.") at 2. The documents attached to

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

plaintiff's amended complaint relate to a period from October 2014 to September 2015, wherein plaintiff alleges that the Social Security Administration ("SSA") improperly reduced and/or halted her Supplemental Security Income ("SSI") benefits. See generally id. On July 23, 2018, the Commissioner of Social Security ("the Commissioner") moved to dismiss the amended complaint for lack of subject matter jurisdiction, alleging that plaintiff failed to exhaust her administrative remedies and did not obtain a final determination of the Commissioner after a hearing on this issue. Dkt. No. 16. Plaintiff filed a response. Dkt. No. 18. For the following reasons, the Commissioner's motion is granted.

## I. Background

On March 18, 2010, an Administrative Law Judge ("ALJ") issued a fully favorable decision and found plaintiff disabled beginning March 15, 2007. Dkt. No. 16-2 ("Prelle Decl.") ¶ 3(a); Exhibit ("Ex.") 1, at 9-14.

### A. Plaintiff's 2014/2015 Address Issues

On October 16, 2014, plaintiff visited the SSA office in New Rochelle, New York concerning the non-receipt of her SSI disability check. See Dkt. No. 8 ("Am. Compl.") at 45. As set forth in a letter from the SSA that plaintiff included as an attachment, the receptionist explained to plaintiff that she needed to be interviewed as her benefits had been suspended because of her unknown address. Id. Prior to her interview, plaintiff became upset and "stated loudly that [she] needed money." Id. Plaintiff continued to

2

act in a "loud, threatening, and disruptive" manner.  Id.  Plaintiff was subsequently banned from entering SSA offices.  Id.  The next day, the SSA sent plaintiff a "Notice of Planned Action," which stated that her SSI payments would cease beginning October 2014 because a prior payment had been returned to the Department of Treasury.  Id. at 42.

On October 23, 2014, plaintiff filed a civil rights discrimination administrative complaint with SSA's Office of General Counsel alleging that unnamed SSA employees at the New Rochelle field office and the 1-800 Teleservice Center discriminated against her by insulting her and refusing to assist her.  Am. Compl. at 31.  According to the June 10, 2015 letter that the Office of General Counsel sent plaintiff in response to her complaint, plaintiff filed a Request for Reconsideration on October 28, 2014.  Id. at 32.  The SSA informed plaintiff in a notice dated December 18, 2014, that her Request for Reconsideration had been dismissed "because [she could not] request a reconsidered determination if [her] benefits [had been] suspended due to [her] unknown whereabouts."  Id.  The Office of General Counsel dismissed plaintiff's complaint because they did not have jurisdiction over plaintiff's claims regarding her suspension of benefits.  Id.

On May 27, 2015, plaintiff filed a second civil rights discrimination administrative complaint with SSA's Office of General Counsel alleging that her SSI payments had been suspended in retaliation for filing her first civil rights administrative complaint.  Am. Compl. at 27.  The Office of General Counsel closed the matter because they lacked jurisdiction.  Id.

3

On June 10, 2015, the SSA sent plaintiff a letter regarding reinstating her SSI benefits. Am. Compl. at 38. In the letter, the SSA indicated that they had set up a telephone appointment to determine what information they needed from plaintiff. Id. On June 26, 2015, plaintiff was interviewed by the New Rochelle field office, and the SSA sent plaintiff a notice dated July 21, 2015, that she had provided the requisite information and her benefits would be reinstated. Id. at 28.

On September 2, 2015, the SSA sent plaintiff a letter indicating that she had received back SSI payments. Am. Compl. at 75. Beginning in October 2015, plaintiff would thereafter receive $733 in SSI payments each month. Id.

On December 27, 2017, plaintiff filed a third civil rights discrimination administrative complaint with SSA's Office of General Counsel alleging that the agency retaliated against her by switching her address and preventing her from receiving her disability benefits. Am. Compl. at 24. The Office of General Counsel closed plaintiff's third complaint because they did not have jurisdiction over the matter. Id. They further noted that the agency's records indicated that plaintiff was currently receiving her SSI payments. Id.

Plaintiff's complaint includes three completed forms entitled "Request for Hearing by Administrative Law Judge" dated October 23, 2014; July 15, 2015; and October 15, 2015. Am. Compl. at 35, 37, 80.

**B. Plaintiff's 2018 Overpayment and Redetermination Issues**

On February 15, 2018, the SSA sent plaintiff a notice entitled "Redetermination Summary for Determining Continuing Eligibility for SSI Payments," and indicated that plaintiff should contact the agency within ten days if she disagreed with any of the statements made therein. Prelle Decl. ¶ 3(b); Ex. 2, at 15-26. On February 22, 2018, the SSA informed plaintiff that she had received an overpayment from December 2016 through May 2017 of $337.98 due to earned wages. Id. ¶ 3(c); Ex. 3, at 27-35. The notice informed plaintiff that if she disagreed with the overpayment decision, she could ask for a waiver, an appeal, or both. Ex. 3 at 27. The February 22 notice also informed plaintiff that her SSI payment for March 2018 would be $750.00, and that she would continue to receive that amount each month unless there was a change in information used to calculate her payment. Id. ¶ 3(d); Ex. 4, at 36.

On March 3, 2018, the SSA informed plaintiff that her SSI payment would decrease from $750.00 to $604.00 beginning April 2018 because plaintiff's other income had increased. Prelle Decl. ¶ 3(f); Ex. 5, at 48. The notice stated that if plaintiff disagreed with this decision, she had sixty days to file an appeal. Ex. 5 at 49. Furthermore, if plaintiff filed her appeal within ten days, her payment amount would not change until the agency decided her case. Id. at 50. On March 13, 2018, the SSA informed plaintiff that her monthly payment would be $604.00 beginning May 2018 unless plaintiff submitted a change in the information used to calculate her payment. Id. ¶ 3(h); Ex. 6, at 54. The notice informed plaintiff that she had sixty days to file an appeal. Ex. 6, at 55.

On April 10, 2018, the SSA sent plaintiff a Notice of Disapproved Claim,

5

determining that plaintiff was no longer disabled and no longer entitled to benefits as of April 1, 2018. Prelle Decl. ¶ 3(i); Ex. 7, at 58. The Notice explained that plaintiff could file a Request for Reconsideration – Disability Cessation, in writing within sixty days. Id. If plaintiff appealed her decision within ten days, she would continue to receive benefits during her appeal. Id. at 59. The notice further explained that a Disability Hearing Officer would decide her appeal. Ex. 7, at 59. If plaintiff disagreed with the disability decision hearing, she could request a hearing before an ALJ within sixty days of the date that she received the decision. Id. at 61. Plaintiff filed a Request for Reconsideration, and on May 8, 2018, the SSA sent her an acknowledgment letter with instructions to submit additional forms. Prelle Decl. ¶ 3(j); Ex. 8, at 64.

Plaintiff commenced this action on March 1, 2018. See Dkt. No. 1. On March 21, 2018, plaintiff filed an amended complaint. See Am. Compl. The form complaint, which plaintiff signed, indicates that she "has exhausted her administrative remedies in this matter and this Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g)." See id. at 1.

## II. Discussion

### A. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(1)). Federal courts are "duty bound . . . to

address the issues of subject matter jurisdiction at the outset." Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 929 (2d Cir. 1998) (overruled on other grounds by Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., 753 F.3d 395 (2d Cir. 2014)). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002) (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)); see also Societe Nationale d'Exploitation Industrielle des Tabacs et Allumettes v. Salomon Bros. Int'l Ltd., 928 F. Supp. 398, 402 (S.D.N.Y. 1996) ("[T]he Court need not accept as true contested jurisdictional allegations and may resolve disputed jurisdictional facts by reference to affidavits and other materials outside the pleadings.").

### B. Exhaustion of Administrative Remedies

"Absent Congressional consent to be sued, the United States is immune from suit and federal courts lack subject matter jurisdiction to entertain the suit. Where the United States waives sovereign immunity and consents to be sued, the terms of such consent define the court's jurisdiction to entertain the suit." Marino v. Berryhill, No. 8:17-CV-2801, 2017 WL 4481166, at *1 (N.D.N.Y. Oct. 6, 2017) (citing United States v. Mitchell, 445 U.S. 535, 538 (1980)). Here, the Court retains jurisdiction pursuant to 42 U.S.C. § 405(g), "which authorizes judicial review of cases arising under the Social Security Act." Id. Pursuant to § 405(g),

> Any individual, *after any final decision of the Commissioner of*

> *Social Security made after a hearing to which he was a party*, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g) (emphasis added). Furthermore, the statute mandates that "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided." Id. § 405(h). Thus, the statute clearly limits this Court's "review to a particular type of agency action, that being a 'final decision of the Secretary made after a hearing[.]'" Marino, 2017 WL 4481166, at *2 (quoting 42 U.S.C. § 405(g)). The Social Security Act does not define the term "final decision of the Commissioner"; instead, "'its meaning is left to the [Commissioner] to flesh out by regulation.'" Moore v. Comm'r of Soc. Sec., No. 16-CV-1713 (SN), 2016 WL 6581330, at *2 (S.D.N.Y. Nov. 4, 2016) (quoting Weinberger v. Salfi, 422 U.S. 749, 767 (1975)).

The Social Security Regulations set forth the administrative review process the plaintiff must under take before requesting judicial review. See 20 U.S.C. § 416.1400. First, the plaintiff must receive an initial determination, wherein the SSA determines whether to grant the plaintiff benefits; second, if dissatisfied, the plaintiff may seek a reconsideration of the initial determination; third, if the plaintiff is dissatisfied with the reconsideration determination, he or she may request a hearing before an ALJ; and finally, if the plaintiff is dissatisfied with the ALJ's decision, he or she may request that the Appeals Council review the decision. See id. § 416.1400(a)(1)-(4). "The Appeals Council's decision, or the decision of the administrative law judge if the request for

8

review is denied, is binding unless" the plaintiff files an action in federal court within sixty days after he or she received notice of the Appeals Council's action. Id. § 416.1481.

"District Courts within the Second Circuit likewise routinely have required plaintiffs to exhaust their administrative remedies before seeking judicial review of Social Security determinations." Papadopoulos v. Comm'r of Soc. Sec., No. 13-CV-3163, 2014 WL 2038314, at *3 (S.D.N.Y. May 15, 2014) (collecting cases); see Dietsch v. Schweiker, 700 F.2d 865, 867 (2d Cir. 1983) ("Section 405(g) . . . has been interpreted to require that, generally speaking, administrative procedures must be exhausted before judicial review is available.").

The Commissioner asserts that "plaintiff has not obtained either a decision by the Appeals Council or a notice from the Appeals Council denying a request for review on any claims related to her SSI benefits." Dkt. No. 16-1 at 8-9. The Court agrees. There is no indication in the record that plaintiff completed the administrative review process as set forth in the Social Security Regulations. As the Commissioner notes, both plaintiff's amended complaint and the declaration of Cristina Prelle, Chief of Court Case Preparation and Review Branch 4 of the Office of Appellate Operations, Social Security Administration, are silent as to whether plaintiff participated in a hearing before an ALJ with regard to the 2014/2015 address issues. See Dkt. No. 16-1 at 9 (citing Am. Compl.; Prelle Decl.). Plaintiff's amended complaint contains three forms entitled "Request for Hearing by Administrative Law Judge," but there is no indication that a hearing ever occurred. See Am. Compl. at 35, 37, 80. As to the 2018 issues

concerning her entitlement to benefits, plaintiff completed step two by filing a Request for Reconsideration.  See Prelle Decl. ¶ 3(j); Ex. 8, at 64 (denoting that the SSA had received plaintiff's Request for Reconsideration form regarding the termination of her disability benefits).  As of the Commissioner's filing of this motion, the final document in plaintiff's electronic file folder at the Office of Disability and Review is an acknowledgment letter of receipt of plaintiff's Request for Reconsideration dated May 8, 2018, "which included additional instructions and forms to be completed and returned by June 24, 2018." Prelle Decl. ¶ 3.  Plaintiff fails to allege whether she completed those forms, received a response to her Request for Reconsideration, or otherwise requested a hearing by an ALJ.  See Dkt. No. 18.

The undersigned notes that the Court may excuse plaintiff's failure to exhaust if three factors are met: "(1) that the claim is collateral to a demand for benefits; (2) that exhaustion would be futile; and (3) that plaintiff[ ] would suffer irreparable harm if required to exhaust administrative remedies." Pavano v. Shalala, 95 F.3d 147, 150 (2d Cir. 1996) (citation omitted).  However, as the Commissioner argues, plaintiff's claims are not "wholly collateral" to her claim for benefits because they are unrelated to the merits of her claim; namely, plaintiff's amended complaint centers on her allegations of "fraud, silent fraud, tort, retaliation, change of address." See Escalera v. Comm'r of Soc. Sec., 457 F. App'x 4, 6 (2d Cir. 2011) (summary order) (concluding that the plaintiff's "claim [was] not collateral to his demand for benefits, as it involves a demand for benefits and investigation into his wage earnings."); Am. Compl. at 2; Dkt. No. 16-1 at 10.  Moreover, there is no indication that exhaustion was futile, and plaintiff "has not

shown that 'the harm suffered in the interim would be irreparable in the sense that no [after-the-fact] relief would be adequate.'" Escalera, 457 F. App'x at 7 (quoting Smith v. Schweiker, 709 F.2d 777, 780 (2d Cir.1983)); see Mathews v. Chater, 891 F. Supp. 186, 189 (S.D.N.Y. 1995) (concluding that there was no irreparable harm when case concerns retroactive benefits owed to the plaintiff).

Accordingly, as the record is clear that plaintiff failed to obtain a final decision of the Commissioner as to her 2014/2015 address issues or her 2018 disability eligibility issues, plaintiff has failed to exhaust her administrative remedies, and this Court lacks subject matter jurisdiction over this action. As such, plaintiff's claim must be dismissed without prejudice "to any future action by [plaintiff] challenging the Commissioner's course of action." Escalera, 457 F. App'x at 7; see Bannon v. Soc. Sec. Admin., No. 17-CV-6859 (KAM), 2018 WL 1640585, at *1 (denoting that the plaintiff's complaint be dismissed without prejudice, but that he may "re-file his complaint, if necessary, when he has exhausted his administrative remedies.").

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby

**ORDERED**, that the Commissioner's Motion to Dismiss (Dkt. No. 16) is **GRANTED** and this case is **DISMISSED without prejudice** due to lack of subject matter jurisdiction; and it is

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

11

**IT IS SO ORDERED**.

Dated: April 29, 2019
      Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge